## ROGERS and others *vs.* PATERSON.

Where the trustees of a legacy for an infant feme covert, which is invested on bond and mortgage in their names as trustees, take a release of the equity of redemption in the mortgaged premises, the nature of the infant's property is not changed, so as to alter the course of descent upon her death during her minority; and the proceeds of the mortgaged premises belong to the husband, as her personal representative, and not to her heirs at law.

If one of the respondents, in an appeal to the court for the correction of errors, dies after issue joined upon the petition of appeal, and that court, without noticing his death, reverses the decision of the chancellor, and makes a new decree against all the respondents, such decree is not void; and the court of chancery is bound to carry it into effect against the surviving parties, and the representatives of the decedent.

Where a suit abates after an appeal, but before the court for the correction of errors become possessed of the cause, it must be revived in the court below, before any further proceedings can be had on the appeal. But if the abatement takes place after the appellate court has become possessed of the cause, that court, upon petition, may order the suit to stand revived in the name of the representatives of the deceased party.

Where a decree is made in the court for the correction of errors against a deceased party, after his death, the suit must be revived, in the court of chancery, against his representatives, before any proceedings can be had to carry the decree into effect.

After a decree in a cause by which the defendant has acquired an interest, he has a right to revive the suit, upon a petition and order, if the complainant or his representatives neglect to revive; and it is not optional with the representatives of the deceased complainant, either to have the suit revived or to have the bill dismissed as to them.

THE bill in this cause was filed by the executors and executrix of John Ellis, deceased, to settle the construction of the will of the decedent, as to a legacy given to his daughter Eliza Emily, formerly the wife of the defendant Paterson. The chancellor decided that the devise over of the legacy, in case of the death of the legatee before she arrived at the age of 21, was valid; and that the legacy was to be distributed as a part of the residuary estate. Upon an appeal to the court for the correction of errors, the decree of the court of chancery was reversed. The appellate court also decided and decreed, that the legacy, together with the accumulation and the interest or

<span style="float:right">March 18.</span>

income thereof, were vested as an absolute interest in Mrs. Paterson; and that upon her marriage with the defendant, it became the absolute property, the limitation over being void in law. That the defendant was also entitled to all such additions as had been made to the fund set apart to satisfy that legacy, and the accumulations of interest, or otherwise, since the death of Mrs. Paterson. And that the cause be remitted to the court of chancery, with directions to refer it to a master, upon the application of either party, to take an account of the legacy and of the accumulations or income thereof, and of the stocks, securities or other property in which the same was invested, and that the complainants be directed to appear before the master and execute and deliver to the defendant all such transfers, assignments and other conveyances of the stock, securities and other property as the master should require; and also to pay to the defendant such sum or sums of money belonging to the fund and the accumulations thereof, as should appear to be in their hands; that upon the coming in of the report, such further direction should be given by the chancellor, as might be necessary or proper to carry into full effect the decree of the appellate court. And that the costs of both parties in the court for the correction of errors, and in the court of chancery, be paid out of the general residue of the estate of the testator by the complainants. The appellants, upon filing the remittitur from the appellate court, obtained the usual order, that the decree of the court for the correction of errors be made a decree of the court of chancery. Issue was joined upon the petition of appeal, in the appellate court, in August, 1832; and in June, 1833, before the argument of the cause upon the appeal, John Taylor, the acting executor, died. No proceedings were had, by either party, to bring his executors before the court for the correction of errors pending the appeal; and the decree of that court was entered in the same manner as if he had been still alive.

The defendant, Paterson, now presented a petition stating the proceedings which had taken place in the court of chancery and in the appellate court, and setting forth also that many of the securities and investments in which the legacy to Mrs. Paterson was invested, were in the name of Taylor,

who had, in his own wrong, made payments of part of the investments, in such manner as to make himself personally accountable, to the defendant. That by his will he appointed J. S. Taylor and J. Johnson his executors, who proved the will in November, 1833, and possessed themselves of the securities and investments in which the legacy of Mrs. Paterson, or some considerable part thereof, was invested. And that, although more than eighty days had elapsed since the death of J. Taylor, the surviving complainants had neglected and refused to proceed against his executors as defendants; nor had such executors of Taylor taken any measures to cause themselves to be made parties to the suit, but had declined so to do. He therefore prayed that the executors of J. Taylor might be ordered to shew cause on such day as the chancellor should deem reasonable, why the suit should not stand revived in their names as complainants, together with the surviving complainants; and that the judgment of the court for the correction of errors might be carried into effect, by modifying, altering, and reversing the decree appealed from, as before mentioned; and that the decree so modified and altered bear date as of the time it was originally pronounced, or during the life time of J. Taylor, and that a suggestion of his death might be entered in the cause. Or if the chancellor should be of opinion that the decree was irregular, in consequence of the death of J. Taylor pending the appeal, so that an application to the appellate court would be necessary, he prayed that an order might be entered to cause the remittitur of the proceedings to be returned there for that purpose. On the part of the surviving complainants, and the executors of J. Taylor, affidavits were read, shewing that $18,000 of the legacy had been invested on bond and mortgage, in the name of the acting executors and executrix of Ellis, in trust for the legatee, Eliza Emily, afterwards the wife of the defendant Paterson, and that before her marriage the executors and executrix took from the mortgagor a release of the equity of redemption in the mortgaged premises. That Mrs. Paterson died without having had issue, and that after her death, the acting executors and executrix sold the same for the sum of $27,000. They therefore insisted that this house and lot was

1834.

Rogers
v.
Paterson.

the real estate of Mrs. Paterson at her death, and that it did not go to her husband as her personal representative. It also appeared from some of the affidavits that Taylor had paid over part of the proceeds of the legacy of Mrs. Paterson to the residuary legatees.

*Archibald G. Rogers,* for the complainants.

*J. Duer & M. T. Reynolds,* for the defendant.

THE CHANCELLOR. Even if the executrix is right in supposing that the $18,000 of the legacy invested on bond and mortgage became the real estate of Mrs. Paterson by the release of the equity of redemption to the mortgagees, so that it descended to her heirs at law, and not to her husband, I have not the power, either upon a bill of review or otherwise, to correct the decision of a superior tribunal, by which the whole property was decreed to the husband. Neither do I see any way in which these facts could be gotten before the court for the correction of errors, even if there was a rehearing there. They must rehear the cause upon the bill and answer, upon which the decree of this court was founded, and no such facts appear upon those pleadings. In this case, however, if the mortgage had been given directly to Mrs. Paterson, and the equity of redemption had been cast upon her by operation of law, it is doubtful whether a court of equity would consider the mortgage debt merged during her minority, so as to deprive herself or her husband of the benefit thereof as personal estate. (*See Powell* v. *Morgan,* 2 *Vern.* 90. *Thomas* v. *Kemys, Id.* 348. *Donisthorpe* v. *Porter, Ambler,* 600. 2 *Eden's Rep.* 162, *S. C. Jicklings Leg. & Equit. Estates,* 427, *note y.*) It is clear, however, that the executors, who were merely trustees for the purpose of investing the legacy so that she might receive the income thereof, as personal estate, had no right, without her consent and during her minority, to change the nature of the property so as to alter the course of descent. The husband, therefore, as her personal representative, had a right to insist that the mortgaged premises should be converted into money, or be conveyed to him, as a part of the personal estate.

1834.

Rogers
v.
Paterson.

There is no doubt that the court for the correction of errors had jurisdiction to make the decree, notwithstanding the death of Taylor, after issue joined in that court. The decree is not void, but is at most only erroneous. This court, therefore, is not competent to correct the error, if any exists. It must carry into effect the decree according to the mandate of the appellate court. If the death of Taylor had been known to that court, the decree would have been entered nunc pro-tunc, as of a day previous to his death. Or perhaps the court might have declined deciding the case, and have given the personal representatives of Taylor a chance to be heard. It is not certain, however, that there is any error in the decree, although it was made and entered after the death of Taylor. The 28th rule of the court for the correction of errors adopts the practice of the house of lords when sitting as a court of appeals, in cases not otherwise provided for. By referring to that practice, it will be found that it is only in those cases where the suit abates before the petition of appeal is presented to the house of lords, that it is necessary to revive the suit, in the court below, before proceeding on the appeal. But if the abatement takes place after the appellate court has become possessed of the cause, the representatives of the deceased party may apply by petition for an order that the appeal stand revived in their names; and if they neglect to do so, the adverse party may obtain an order to revive. After such order of revival, the proceedings will go on as if the original party were living; a supplemental case being furnished, showing such revival. (*Palmer's Pr.* 80. *Sydney on Appeals,* 110.) And upon the authority of Urquhart's Experienced Solicitor in proceedings under the appellate jurisdiction of the house of lords, it is said that if the respondent's representatives do not apply for an order to revive the suit in his name, where he dies before the hearing, the cause may nevertheless be heard on the part of the appellant, without regard to the respondent's death; though it will be necessary to revive the cause in the court of chancery before any further proceedings can be had there to carry into effect the decree of the appellate court. (*Palmer's Pr.* 81.) Such indeed appears to be the settled

practice in England, where the defendant in error dies after
joinder in error. (*Palmer's Pr.* 155. 1 *Archb. Pr.* 334, *ed. of*
1833. *Law & Prac. of Writs of Error*, 114. 2 *Saund. Rep.*
101, *note* 1.) I am aware that in *Wilson* v. *Hamilton*, (9 *John.
Rep.* 442,) where the suit had abated by the death of one of
the parties after the filing of the appeal, the court for the cor-
rection of errors remanded the cause to the court of chancery,
that the proper parties might be called in. But I presume
that must have been a case in which the abatement had tak-
en place before the respondents had answered the petition of
appeal. It only remains to be considered what steps are to be
taken in this court to carry into effect the decree of the supe-
rior jurisdiction.

The one hundred and eighteenth section of the title of the
revised statutes relative to the court of chancery, (2 *R. S.*
185,) provides that if a complainant shall die, and there be no
surviving complainant, or if the survivor shall neglect to pro-
ceed against the representatives of the decedent to make them
defendants in the suit, this court, upon the petition of the
original defendant, may order such representatives to show
cause, at a certain day to be named in the order, why the suit
should not stand revived in their names, or the bill be dismiss-
ed, as far as the interests of such representatives are concern-
ed. It is insisted by the counsel for the surviving complain-
ants and the representatives of J. Taylor, that this section
only authorizes the court to make an order in the alternative.
And that the representatives of the deceased complainant will
be permitted to elect, either to have the suit stand revived in
their names, or to have the bill dismissed as to them. I am
satisfied, however, such was not the intention of the legisla-
ture ; but that, on the contrary, it was intended to give the
court the power to make such order as would be applica-
ble to the case. The object of this section, and of the three
which immediately follow it, was to provide for the revival of
suits, by a summary proceeding, in certain cases which had
not been before provided for. It had been decided by this
court that if a suit abated by the death of one of the com-
plainants, before decree, it was at the election of the surviving
complainants to revive the suit, by bringing in his representa-

tives, or to abandon the suit without paying the defendant the costs to which he had been subjected. (*Pells* v. *Coon, Hopk. R.* 450.) The same right of election was given to the representatives of a sole complainant who had died before a decree. But if there had been a decree in the cause, in which the defendant had an interest, he had a right to revive, if the complainant or his representatives neglected to do so. (*Williams* v. *Cook,* 10 *Ves. R.* 407.) This last case, however, was not provided for in the former statute, which allowed suits in chancery to be revived by a summary proceeding. The defendant was therefore compelled to resort to the more expensive and dilatory proceeding by bill of revivor, where there had been a decree in his favor. The object of the 118th section was to provide a remedy by a summary proceeding in these several cases. That, upon an abatement before decree, the complainants or their representatives might be compelled to revive within a reasonable time, or that they should be precluded, and their bill be dismissed, either with or without costs, as the court might think proper ; and upon a decree in which the defendant was entitled to revive, that he might be permitted to revive upon petition and in a summary manner. The petition in the present case shows that the defendant has a decree of the court for the correction of errors in his favor, which entitles him to revive the suit against the executors of Taylor, that they may account for and deliver over the securities and monies belonging to the defendant, of which they have possessed themselves as the representatives of Taylor. An order must therefore be entered, directing the executors of Taylor named in the petition to show cause, on the first Tuesday of April next, why the suit should not stand revived in their names, as complainants, with the surviving complainants in the original suit. And the order must also direct such executors and the surviving complainants to show cause at the same time, why a decretal order of this court should not be entered to carry into effect the decree of the court for the correction of errors. A copy of the order and of the petition upon which it is founded are to be served upon the executors of Taylor, or one of them, and also upon the solicitor of the surviving complainants, the usual time before the day for showing cause.

1834.

Rogers
v.
Paterson.

The order to show cause having been duly served;

*A. G. Rogers,* for the surviving complainants, and

*J. J. Rosevelt,* for the executors of J. Taylor, appeared to oppose the revival of the suit.

*J. Duer & M. T. Reynolds,* for the defendant.

April 15.      THE CHANCELLOR. The order to show cause why this suit should not stand revived in the name of the executors of John Taylor deceased, one of the original complainants, together with the surviving complainants, must be made absolute. Most of the objections now raised to the revival of the suit as against the executors of John Taylor were argued and fully considered upon the application for the order to show cause. It is only necessary, therefore, to refer to the opinion of the court upon that application, in answer to the objections then considered. The decree of the court for the correction of errors is conclusive upon the parties here, not only as to their rights, but also as to the regularity of the decree. That court had jurisdiction of the case, and it does not belong to the court of chancery to set aside or disregard the decision of the appellate court, as irregular and unauthorized. The decree of that court must therefore be deemed to have the same effect here as if John Taylor had been alive at the time of making that decree, and had died afterwards. It is then a decree that John Taylor and the other complainants who joined with him in the answer to the defendant's petition of appeal, account for and pay over to the defendant the legacy bequeathed to his deceased wife, with the income or accumulations thereof, under the direction of a master, and assign and deliver over to him the securities in which the same is invested. Even before the revised statutes, a defendant was entitled to revive a suit after a decree for an account had been entered, or any other decree upon which the rights of the parties had been definitively settled, and where the defendant could derive a benefit from a continuation of the proceedings in the suit. (*Kent*

1834.

Rogers.
v.
Paterson.

v. *Kent, Prec. in Ch.* 197. *Stowell* v. *Cole,* 2 *Vern.* 297. *Williams* v. *Cook,* 10 *Ves.* 406. *Harwood* v. *Smedes,* 12 *Id.* 316.) As to this class of cases, the revised statutes have only altered the law so far as to permit the defendant to do that upon petition and order which he was before authorized to do upon a simple bill of revivor. And the rights and liabilities of the representatives of the deceased complainant are precisely the same, whether the suit is revived against them as complainants, upon the petition of the defendant, or as defendants on a bill of revivor filed by him. The right of the defendant to revive is the only question which the representatives of the deceased complainant can bring before the court in either case, so far as the former proceedings in the cause are concerned.

It is, however, insisted, on the part of the executors of J. Taylor, that the whole cause of action survived against the surviving complainants, and that the suit cannot be revived against the representatives of Taylor. The suit is undoubtedly abated as to Taylor; and the petition of the defendant shows that the whole cause of action, or the claim of Paterson under the decision and decree of the appellate court, did not survive against the other complainants. The petition is a substitute for a bill of revivor, in which the party filing the same may always insert so much new matter as is requisite to show how and why he is entitled to revive the suit. Here the defendant shows himself entitled to revive the suit against the representatives of Taylor, on the decree to account and deliver over the securities in which the legacy or the avails thereof was invested, by showing those securities in the hands of the representatives of Taylor, and that such representatives had possessed themselves of the fund decreed to belong to the defendant, or a part thereof. A decree against several executors, or trustees, to account, is a decree that each account for so much of the estate or trust fund as he is justly chargeable with. And if one of them dies, after such a decree, the adverse party may revive the suit against his representatives, for the purpose of charging his estate with what had come to his hands; or he may proceed against the survivors. (*Hampson on Trustees,* 84.) The bill of revivor in such a case, or the petition to revive,

may show that the estate of the decedent is chargeable under the decree, or that the fund is in the hands of his representatives; for the purpose of showing that the party seeking to revive has an interest in the continuation of the proceedings against such representatives.

The commencement of a suit against the executors, in a court of the United States of concurrent jurisdiction, by the residuary legatees, for the purpose of evading the effect of the decision of the court of dernier resort in this state, cannot alter the rights of Paterson in this suit. Even if that suit is prosecuted in good faith, and not in collusion with the representatives of Ellis, and if the federal courts should not consider themselves bound by the decision of the highest tribunal in this state on a question of local law, a recovery against the representatives in that suit, in favor of the residuary legatees, could not affect the right of Paterson to his wife's legacy, under the decree in this cause. And if the executors should be compelled to pay it the second time, they must attribute it to their own neglect to make all the conflicting claimants parties to the suit instituted by the executors to settle the construction of this will.

There must be a decree of this court to carry into effect the decree of the court for the correction of errors, and referring it to Master Codwise, to take the account, and to direct the transfer and delivery of the legacy and the securities in which it is invested, as directed by that court; the terms of the decretal order of this court to correspond as near as may be with the decree of the court of errors, adapting such decree to the suit, as it is now to stand revived, in the names of the executors of John Taylor in conjunction with the surviving complainants in the original suit. And any of the parties are to be at liberty to apply to this court from time to time for such further directions as may be necessary or proper to carry such decree into full effect.